**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NICOLE D. FARLOW,                                      Case No. 1:17-cv-27

        Plaintiff,                                      Barrett, J.
                                                        Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Nicole Farlow filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.   *See* 42 U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents several claims of error for this Court's review.   As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the record as a whole.

### I.  Summary of Administrative Record

Prior to filing the 2013 Supplemental Security Income ("SSI") application that forms the basis for this judicial appeal, Plaintiff filed several unsuccessful applications for SSI benefits, including in 2005, 2006, and 2010. (Tr. 199).   The 2005 and 2006 applications appear to have been denied at the initial stage and not appealed.   (*Id.*)

Plaintiff's 2010 application alleged that her disability began on May 1, 2005. After that application was denied initially and on reconsideration, Plaintiff sought an evidentiary hearing before ALJ Dwight Wilkerson.  In a written decision dated November 9, 2012, ALJ Wilkerson found that Plaintiff had severe impairments of borderline

1

intellectual functioning, an anxiety disorder, and obesity, but nevertheless remained capable of a reduced level of light work. (Tr. 155, 157). Plaintiff filed no appeal of ALJ Wilkerson's adverse decision.

On February 22, 2013, Plaintiff filed another SSI application, continuing to allege disability beginning May 1, 2005.[1] After that claim also was denied initially and upon reconsideration, Plaintiff again requested an evidentiary hearing before an ALJ. On December 2, 2015, Plaintiff appeared and testified at a hearing before ALJ Thuy-Anh T Nguyen; a vocational expert also testified. On January 7, 2016, ALJ Nguyen issued another adverse written decision, in which she concluded that Plaintiff is not disabled. (Tr. 77-91). Plaintiff filed an appeal and submitted new evidence, but the Appeals Council denied further review, leaving ALJ Nguyen's decision as the final decision of the Commissioner.

At 33 years of age at the time of her second hearing, the ALJ determined that Plaintiff was still a younger individual. Plaintiff completed high school and obtained an associate's degree from a college program. She is single, has no children, and lives with her parents. She testified she has no current income, and that her most recent part-time job was working as a substitute aid. (Tr. 111-12).

ALJ Nguyen determined that the Plaintiff has severe impairments of "left hip status post hip replacement, bilateral hearing loss status post bilateral tympanoplasty, diabetes mellitus, asthma, obesity, anxiety disorder, borderline intellectual functioning, and a history of attention deficit hyperactivity disorder (ADHD). (Tr. 79). However, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met

---

[1]There is an ambiguous reference in the hearing transcript to a possible amendment of the alleged onset date to 2008. (*See* Tr. 109). It is unnecessary to resolve the ambiguity since Plaintiff's failure to appeal ALJ Wilkerson's November 2012 adverse decision bars consideration of disability prior to that date.

or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 84).

Although ALJ Nguyen found new and material evidence of increased physical limitations since the November 2012 adverse decision, she found no new and material evidence regarding Plaintiff's mental impairments. Despite the added physical limitations, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of sedentary work, subject to additional non-exertional limitations. Specifically, the ALJ determined that Plaintiff: (1) can only frequently pull/push with the lower left extremity; (2) can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; (3) can occasionally balance, stoop, and crouch but can do no kneeling or crawling; (4) cannot work in noisy or very noisy environments; (5) must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and all exposure to hazardous machinery and unprotected heights; (6) can perform simple, routine, repetitive work and is limited to low stress jobs; (7) is able to follow simple instructions where only short-term concentration is required; (8) cannot perform fast-paced work or work involving strict production quotas; (9) requires a hand held assistive device to ambulate or stand, and (10) would be off task for 8% of the workday. (Tr. 86).

Considering Plaintiff's age, education, work experience and RFC, and based on testimony from the vocational expert, the ALJ found that Plaintiff could still perform a significant number of jobs in the national economy including an assembler, an inspector, or a packer. Therefore, the ALJ determined that Plaintiff was not under a disability.

In her appeal to this Court, Plaintiff argues that the ALJ erred when she: (1) improperly evaluated the medical opinion evidence, including by failing to adopt

limitations pertaining to absenteeism; (2) failed to find Plaintiff meets or equals Listing 1.02; (3) failed to find her pain complaints to be fully credible; and (4) failed to provide an appropriate hypothetical to the vocational expert than encompassed all of Plaintiff's limitations. As a final and alternative claim of error, Plaintiff argues that this case should be remanded under sentence six, for review of new and material evidence.

Although several of Plaintiff's claims would not require reversal standing alone, I conclude that the ALJ committed reversible error in her evaluation of the medical opinion evidence. As a result, I recommend remand for further development of the record under sentence four.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

4

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Relevant Medical Evidence

As ALJ Nguyen acknowledged, Plaintiff's physical condition deteriorated significantly after the November 2012 denial of her most recent SSI claim. In the unappealed November 2012 decision, Plaintiff was found to have no severe physical impairments other than borderline intellectual functioning and obesity. At that time, Plaintiff was 5 foot 6 inches, and weighed 325 pounds. (Tr. 155). Although ALJ Wilkerson noted that Plaintiff had submitted some evidence of asthma (controlled with inhalers), well-controlled diabetes mellitus, and some hearing loss, as well as recurrent kidney stones, none of those impairments were severe at that time. (Tr. 156).

Two state consulting physicians reviewed Plaintiff's records after ALJ Wilkerson's adverse decision, in connection with Plaintiff's new 2013 SSI application. On June 29, 2013, Dr. Morrell determined that ALJ Wilkerson's physical RFC findings were not binding, based upon Plaintiff's submission of new and material physical evidence dated January 2013, involving mild arthritis with acerabular over-coverage in her left hip, as well as recent ear surgery. (Tr. 193). On December 5, 2013, a second consultant, Dr. Hughes, noted similar evidence, and that Plaintiff's diabetes had become less controlled beginning in February 2013 through the date of his review. (Tr. 208-209).

Thus, by the date of her second hearing in December 2015, Plaintiff had increased symptoms from her diabetes mellitus, asthma,[2] and bilateral hearing loss, sufficient to demonstrate that all three conditions should be considered as "severe" impairments. (Tr. 79). On January 7, 2013, Plaintiff underwent tympanoplasty (reconstruction of the eardrum) on her left ear, and in March 2013, she underwent a

---

[2]Although her asthma remained well controlled, it still considered to be "severe" because it required environmental limitations. (Tr. 82).

similar surgical procedure on her right ear. (Tr. 81). As of February 2015, she required hearing aids. Her weight, at 319 pounds, was relatively stable, (*see id.*) although the record reflects periodic fluctuation. (*See* Tr. 2215-2216, noting weight of 341 pounds).

The most significant change in Plaintiff's physical condition between the 2012 decision and the December 2015 hearing was the addition of severe orthopedic complaints relating her left hip. As noted by the reviewing consultants, Plaintiff's complaints began around January 16, 2013, when Plaintiff was found to have only "mild" arthritis in left hip. (Tr. 81, citing Tr. 1006). Two years later in January 2015, she began treatment with an orthopedist, Dr. Choudhury; she received an injection on January 29, 2015 that provided a brief period of relief, but declined further injections because the steroidal treatment interfered with her blood sugar control.

At an initial visit on January 13, 2015, Dr. Choudhury found no neurological, sensory, or motor deficits, and noted only "limited antalgia" in her gait, with "well preserved strength." He concluded that "[b]ecause [she] has <u>such good function currently</u>, [she] has decided to wait and watch to see how the hip feels after several months," and to return only if needed. (Tr. 2285, emphasis added). He recommended physical therapy and advised rest, a cane "for support" and analgesic pain medication. (*Id.*; *see also* Tr. 81)  However, Plaintiff's records reflect worsening symptoms over the following months. At an office visit on April 10, 2015, she reported that her pain had increased in the last 3-4 weeks, and that she had fallen twice while at church. (Tr. 2655). She also complained that a six-week course of physical therapy had not been helpful to resolve her symptoms. (Tr. 2657).

Also in April 2015, Dr. Utz of University Orthopedics noted marked limitation in the motion of Plaintiff's hips on exam, "consistent with significant degenerative

change[s]," though x-ray studies were "markedly limited by massive body habitus." (Tr. 2200, 2355). Dr. Utz recommended that Plaintiff explore surgical options since conservative treatment had not yet proven helpful, and she was experiencing increased symptoms.

On April 30, 2015, Plaintiff sought a surgical consultation with Dr. Kelley. She reported chronic hip pain for six years, with a worsening of her hip pain over the past six months. Dr. Kelley determined that Plaintiff was not a candidate for hip replacement surgery due to her extreme obesity, with a BMI of 52. (Tr. 2374).

Disagreeing with Dr. Kelley, Dr. Choudhury performed left hip replacement surgery on September 21, 2015, approximately ten weeks prior to her December 2, 2015 hearing before ALJ Nguyen. Shortly after surgery on October 20, 2015, Plaintiff was reported to be "doing very well" with "minimal complaints of pain," and only mild swelling, with "excellent alignment of the total hip prosthesis." (Tr. 82; Tr. 2576-2577). On November 19, 2015, her surgical incision was well healed and Plaintiff had no neurological or sensory deficits. She was noted to be in "no distress" on physical exam. (Tr. 2559). However, the same exam continued to show "gait disturbance" on examination, and difficulty walking without her cane. Plaintiff subjectively reported "swaying" when she walks and residual stiffness in her upper leg. (Tr. 82; Tr. 2559-2560). At the time, she rated her pain level as a "3" on a 10-point scale. Dr. Choudhury prescribed physical therapy and pain medication. A few days after that appointment on November 24, 2015, Dr. Choudhury completed a physical RFC form in which he opined that Plaintiff's physical limitations were extreme and disabling. (Tr. 2692-2695).

Dr. Dammel, a primary care practitioner, has treated Plaintiff for diabetes mellitus and for morbid obesity since 2002. Although agency consulting physicians noted a

downturn in the level of diabetes control in February 2013, and Plaintiff testified in December 2015 that her blood sugars were not controlled 75% of the time, a November 18, 2015 record noted that Plaintiff had lost 28 pounds since her hip replacement surgery, and that her blood sugars had been in much better control. As a result, her insulin dosing was reduced, with a recommendation to continue lifestyle changes to address her obesity. (Tr. 2571). Nevertheless, Dr. Dammel completed a physical RFC form three days later, on November 21, 2015, in which he opined that Plaintiff suffers from extensive and disabling physical limitations. (Tr. 2325-2331).

Plaintiff testified at the hearing held in December 2015 that her pain was only in her left hip, and that she had no pain at all in her right hip. (Tr. 115). However, Plaintiff now seeks consideration of new evidence that after the ALJ's January 2016 decision, she began to experience significant right hip pain. She alleges that her surgeon first recommended right hip replacement in February 2016, and that she underwent a second hip replacement surgery in July 2016. For the reasons explained below, this Court may not consider the evidence of Plaintiff's right hip impairment with respect to the recommended sentence four remand, but the ALJ remains free to consider that evidence in the course of further development of the record.

### C. Plaintiff's Claims of Error[3]

### 1. The ALJ's Credibility Assessment

Plaintiff argues that the ALJ committed reversible error when she failed to find Plaintiff fully credible. In his November 2012 decision, ALJ Wilkerson first determined that Plaintiff was "not entirely credible." (Tr. 158). ALJ Wilkerson noted that although

---

[3]Plaintiff's Statement of Errors lists five claims in support of remand under sentence four, and a sixth claim concerning remand under sentence six. The undersigned has combined two closely related claims, and reordered the discussion of the listed errors for the convenience of the Court.

Plaintiff testified that she is able to sit for only 20 minutes at a time and had significant pain, most of her alleged physical impairments were not severe.  Moreover, she reported that in September 2010, she was going to school full-time to obtain an associate degree (which she later completed), and spent time when she was not at school doing homework or household chores, running errands, going grocery shopping, socializing with friends and family, and spending time on the computer.  (Tr. 158).

In her January 2016 decision, ALJ Nguyen similarly determined that Plaintiff was "not a fully credible witness." (Tr. 87).  She pointed out that during examining psychological evaluation in October 2005, the consulting psychologist questioned Plaintiff's effort, and during a more recent consultative psychological exam in November 2013, the psychologist noted that Plaintiff again appeared to exaggerate some of her mental health difficulties and did not appear to put forth good effort.  (Tr. 87).  Testing results were inconsistent with her daily functioning and level of educational attainment and were not considered to be a valid representation of her abilities.  (*Id.*)  In addition, Plaintiff has a "very weak employment history."  (*Id.*)  She has never worked full-time, and has earned income only in three of the last 15 years.  Thus, the ALJ reasoned that it could not be assumed that Plaintiff would work if she could.  (*Id.*)

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions

among the medical records, her testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

Plaintiff argues that the ALJ should not have considered her exaggeration of her psychological symptoms in assessing the credibility of her physical complaints. However, she cites no controlling authority to suggest that a plaintiff's clear exaggeration of some symptoms cannot be used to assess the credibility of her complaints of other subjective symptoms.  Plaintiff also cites to Social Security Rule 16-3p, which does not retroactively apply to this case.[4]  Further, she argues that certain medical evidence and clinical findings in the record, particularly in 2014 and 2015, support her claim. However, the fact that favorable evidence could support her claim does not vitiate the substantial evidence that supports the adverse credibility finding.  In addition to the referenced evidence of her exaggerated psychological complaints and extremely weak work history, the ALJ pointed out that Plaintiff testified that she has trouble gripping anything due to residual problems from breaking her wrist 20 years earlier. (Tr. 129).  However, she also admitted that she has not had any medical treatment for her wrist since breaking it.  (Tr. 80).

Plaintiff maintains that her prior application for SSI benefits with an onset date of disability of 2005, at the age of 23, "does not detract from her credibility" but instead should have been viewed as additional support since she complained for so long a period of time.  However, the prior application was denied in part because of very significant credibility issues, discussed above, including the fact that Plaintiff was attending school full-time during the period in which she alleges she was disabled.

--------------------

[4]SSR 16-3p applies only to cases decided after March 16, 2016.  However, it clarifies that the term "credibility" in SSR 96-7p, which applies to this case, was "not an examination of an individual's character."  81 Federal Register 14166.

Viewing the record as a whole, I find the credibility determination to be substantially supported, reflecting no reversible error. Despite Plaintiff's advocacy for an alternative interpretation of the evidence, the ALJ's evaluation of Plaintiff's subjective complaints was reasonable. Nevertheless, in view of the possibility that other legal error concerning the evaluation of the medical opinion evidence infected the credibility analysis, the ALJ should re-evaluate Plaintiff's credibility on remand.

## 2. Plaintiff's Step Three Claim That She Meets Listing 1.02

At Step 3 of the sequential analysis, Plaintiff bears the burden of proving that her impairment satisfied every element of a listed impairment, such that she is entitled to a presumption of disability. Plaintiff argues that her orthopedic impairment met Listing 1.02A because she had no ability to ambulate effectively, which is defined as "an extreme limitation of the ability to walk." 20 C.F.R. pt. 404, Supbpt. P., App. 1 §1.00(B)(2)(b)(1).

As support for this contention, Plaintiff first points to an October 2014 record that notes some swelling in her legs over the past month. However, the referenced record does not support Listing 1.02A. (Tr. 2215). The record reflects a follow-up appointment with Plaintiff's primary care physician after she had presented to the ER the prior month, for unexplained swelling in her legs. Plaintiff reported to her physician that she has some swelling daily that is "moderate in severity and improving" with prescribed diuretics. (*Id.*) Despite the subjective report of "moderate" swelling, the physician found only "trace edema" on examination, and noted a normal and intact neurologic exam, with normal range of motion, normal strength in both upper and lower extremities bilaterally, and a normal gait. (*Id.*) In short, the October 2014 record strongly undercuts any claim of Listing Level impairment based on the inability to ambulate.

12

Plaintiff also points to Dr. Choudhury's recommendation that Plaintiff use a cane as needed for stability, but that recommendation did not occur until January 2015, shortly after she began treatment with him. He recommended physical therapy at the same time. (Tr. 2284-2286). It is unclear whether he strongly advocated that Plaintiff use a cane, as Plaintiff testified that she had a cane readily available from her grandmother. (Tr. 131). Certainly, one cannot infer from the brief reference that he expected Plaintiff to use a cane at all times. On April 10, 2015, she reported using her cane "more often," implying that her use of the cane still was not constant. (Tr. 2652). On June 24, 2015, an examination confirmed Plaintiff's antalgic gait with cane and hip pain, but again noted full motor strength in upper and lower extremities, no atrophy or abnormal movements, intact neurologically in both upper and lower extremities, normal and symmetrical reflexes and intact coordination. (Tr. 2636).

A month later on July 30, 2015, Dr. Dammel noted entirely normal findings on examination, including no edema in her legs, no acute distress, and normal motor and sensory examination with a "<u>normal gait</u>." (Tr. 2302, emphasis added).

Although Plaintiff testified that she was prescribed a walker in July 2015 (Tr. 2624), it appears that prescription by Dr. Choudhury was based upon Plaintiff's report of an acute increase in pain and difficulty walking at that time, shortly before her scheduled hip replacement surgery in September 2015. (Tr. 2455). There is no evidence that Dr. Choudhury believed that treatment would be so unsuccessful that she would continue to require a walker after her hip replacement, and his post-surgical records suggest a beneficial outcome.

The only other evidence that Plaintiff argues supports Listing level severity is Dr. Choudhury's November 2015 RFC opinion that Plaintiff could walk less than one block.

(Tr. 2693). However, based on the record as a whole, that single RFC opinion is insufficient to carry Plaintiff's burden of proof that she met the Listing.

In her Step 3 analysis, the ALJ reasonably determined that Plaintiff "does not have an orthopedic condition that meets or equals any part of section 1.00…, including section 1.02 of those listings." (Tr. 84). Instead, the ALJ determined that "the record does not show that the claimant has, as a result of her physical impairments including obesity, lost the ability to ambulate effectively [under Listing 1.02A], or that she has lost the effective use of her hands and arms for gross and fine manipulation [under Listing 1.02B]. The record does not contain the results of objective studies or findings based upon medically acceptable clinical or laboratory diagnostic techniques establishing a condition or combination of conditions that meets or equals any of the regulatory listings for physical impairment." (*Id.*)

Importantly, ineffective ambulation is defined generally as having insufficient functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of <u>both</u> upper extremities." § 1.00(B)(2)(b)(1) (emphasis added). Plaintiff was prescribed one cane, not two, and has failed to sustain her burden of proof to show that both of her arms were impacted. *Accord Burbo v. Com'r, of Soc. Sec.*, 877 F. Supp.2d 526 (E.D. Mich. 2012)(affirming where Plaintiff had been prescribed and used only one cane, not two). Dr. Choudhury's recommended use of a single cane (that Plaintiff had at home) for "stability" was in January 2015 – less than 12 months prior to her hearing date. At the time, Plaintiff was exhibiting such "good function" that Dr. Choudhury recommended no treatment other than physical therapy and a "watch and wait" approach, with Plaintiff to return only if her symptoms did not improve.

In addition, the Listing states that the diagnosis and evaluation of ineffective ambulation should be supported "by detailed descriptions of the joints, including ranges of motion, condition of the musculature (e.g., weakness, atrophy), sensory or reflex changes, circulatory deficits, and laboratory findings, including findings on x-ray or other appropriate medically acceptable imaging." *Id.* at §1.00(C). Contrary to the latter, Plaintiff consistently was evaluated with no sensory or reflex changes, no weakness or atrophy, or other motor loss. Although Plaintiff clearly had hip pain and limited motion that led to a left hip replacement, the record of difficulties in ambulation prior to her surgery were neither consistent nor supported by any specific findings. She had few (if any) difficulties prior to January 2015, and as recently as July 30, 2015, her physical examination reflected a normal gait. (Tr. 2302). Moreover, to meet the Listing, Plaintiff was required to show that "the return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id.* at § 1.02A; *see also generally* Listing §1.03 (describing reconstructive surgery where return to effective ambulation did not occur or is not expected to occur within 12 months).[5]

As of her hearing date, Plaintiff arguably was still in an acute phase of recovery from her hip surgery. Dr. Choudhury's initial post-operative notes indicated good surgical results. Plaintiff herself testified that she still had pain from her hip replacement, but that "so far it's doing okay." (Tr. 115). Because musculoskeletal impairments frequently improve with time or respond to treatment, a longitudinal clinical record is particularly important. *See* § 1.00(H); *see also* §1.00(I) (discussing the evaluation of the effectiveness of treatment, including surgical treatment); 1.00(J)(4)

---

[5]Plaintiff does not argue before this Court that she meets or equals Listing 1.03; it is referenced only insofar as it may be relevant on remand.

(explaining how an individual who uses a cane should be evaluated and examined with and without the use of that assistive device, with documentation of the basis for the use of the hand-held device).

Dr. Choudhury's November 2015 RFC opinion provides no specific findings or objective evidence to support his assessment of Plaintiff's ability to walk with and without the use of the single cane. Additionally, the opinion was rendered soon after her hip replacement surgery, and a query asking "the earliest date that the description of symptoms and limitation in this questionnaire applies" was left blank. (Tr. 2695). Even considering this minimal evidence of ineffective ambulation, the ALJ's determination that Plaintiff did not meet Listing 1.02A is substantially supported.[6]

The undersigned also finds no reversible error based on Plaintiff's complaint that the ALJ failed to provide a more detailed discussion of why she did not meet or equal Listing 1.02A. *Accord Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 656-57 (6th Cir. 2009)(holding that courts may affirm where an ALJ fails to fully discuss listing level criteria so long as a review of the record indicates that any error was harmless).

Nevertheless, if the Court enters an order of remand for other reasons consistent with this recommendation, the ALJ should reconsider any applicable Listing. The undersigned notes, in particular, the possibility that Plaintiff's obesity may exacerbate her orthopedic impairment. *See generally* SSR 02-1p, 2000 WL 628049 at *3 (Sept. 12, 2002) (noting that Level III or "extreme obesity" represents the greatest risk for developing obesity-related impairments. Although there is no separate listing for obesity, the regulations caution that:

---

[6]Although Plaintiff includes a cursory reference to Listing 1.02B, Plaintiff fails to point to any evidence at all that she would meet or equal that Listing, which requires the inability to perform fine and gross movements.

The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators <u>must consider</u> any additional and cumulative effects of obesity.

20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.00(Q)(emphasis added).

Also, while SSR 02-1p "does not mandate a particular mode of analysis, … it directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Miller v. Com'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016)(internal quotation marks and additional citations omitted). Here, although the ALJ referenced SSR 02-1p at Step 3, she does not appear to have expressly indicated whether she further considered Plaintiff's extreme Level III obesity in determining her ability to perform work activities. Although Plaintiff has waived any specific error by failing to raise this issue, it is noted for purposes of remand. An ALJ can satisfy this requirement (considering obesity in assessing RFC) so long as she credits RFC opinions from physicians who explicitly accounted for obesity. *Miller*, 811 F.3d at 835. Plaintiff's treating physicians referenced her obesity but the ALJ did not credit their opinions.

### 3. Evaluation of Medical Opinion Evidence

Although the undersigned finds no reversible error in the ALJ's credibility assessment or Step 3 analysis, Plaintiff's arguments that the ALJ improperly evaluated the medical opinion evidence find more purchase. Based on the ALJ's determination that Plaintiff was not a credible witness, the ALJ emphasized other evidence, including her evaluation of the medical opinion evidence. (Tr. 87, discussing the importance of other evidence in light of Plaintiff's lack of credibility).

17

Plaintiff identifies several errors. She contends that the ALJ erred by failing to give her two treating physicians' opinions "controlling weight," by failing to provide "good reasons" for the weight that she gave to their opinions, by failing to adopt their specific RFC opinions concerning her level of absenteeism, and by failing to acknowledge or discuss the large amount of evidence that post-dated the opinions of the non-examining consultants on whose opinions the ALJ chiefly relied. Based upon a review of the record as a whole, I agree that the ALJ committed reversible error in her evaluation and discussion of the opinion evidence.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.927(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner is required to provide "good reasons" if the Commissioner does not give controlling weight to the opinion of a treating physician. *Id.* Additionally, in cases when an ALJ does not give controlling weight to the opinion of a treating physician, the ALJ must explain the weight given to the opinion after considering the following relevant factors: the length, nature, and extent of treatment relationship, evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 416.927(c).

The treating physician rule generally requires the ALJ to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Nevertheless, "[i]n appropriate circumstances," the opinions of non-examining

consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). While an ALJ may not reject a treating physician opinion solely based on the conflicting opinions of non-examining consultants, *see Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), no reversible error occurs when an ALJ determines that a treating physician opinion is not entitled to controlling weight because it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole.

As stated, the record contains opinions from two treating physicians, both of whom opined in late November 2015, just days before the hearing,[7] that Plaintiff had very severe functional limitations that would disable her from all work. Among the limitations that would preclude all work, both physicians opined that Plaintiff would be absent from work more than four days per month. However, the ALJ gave both opinions "little weight." (Tr. 88). The Commissioner acknowledges that in her explanation of why she was giving the opinions only "little" weight, the ALJ did not "explicitly" discuss most of the relevant factors. (Doc. 9 at 8). Although discussion of each relevant factor is not required, the ALJ's failure to better articulate the relevant factors adds to the overall lack of good reasons for her rejection of the opinions.

---

[7]The submission of the treating physician opinions and a large volume of roughly 300 pages of critical evidence so close to the hearing date prompted the ALJ to warn Plaintiff's counsel that "typically I would postpone a hearing…with that kind of last-minute evidence just because …there's no way…to prepare adequately" (Tr. 103-104). However, the ALJ permitted Plaintiff to proceed based upon the fact that it was counsel's first time appearing before the ALJ, and because counsel had only recently been retained. (*Id.*) A different attorney represents Plaintiff in this Court.

The ALJ did acknowledge that Dr. Dammel had treated Plaintiff 2-4 times per year since 2002,[8] but discounted his opinions based on the alleged inconsistency between his opinion that she had a "good" prognosis and the extreme functional limitations that he endorsed. (Tr. 88). As Plaintiff points out, the "good" prognosis likely relates to Plaintiff's diabetes control, which was noted to be improved shortly before Dr. Dammel rendered his opinion. The ALJ also reasoned that "[t]he record does not show the type of significant clinical findings or provide objective evidence to support the extreme physical limitations indicated…." (*Id.*) However, the ALJ failed to discuss *any* specific contrary evidence in 2014 or 2015. Considering the strong evidence of a worsening of Plaintiff's physical impairments over that time period, the ALJ's analysis fails to satisfy the "good reasons" requirement.

A similar error is evident in the ALJ's dismissal of Dr. Choudhury's opinions. The ALJ fails to acknowledge that Dr. Choudhury has specialized training as an orthopedic surgeon, and that he closely followed Plaintiff before and after performing hip replacement surgery. The ALJ gave his assessment "little weight" solely because the assessment was "based on the claimant's recent surgery." (Tr. 88). As discussed, it is true that Dr. Choudhury's November 2015 opinion left blank a query asking "the earliest date that the description of symptoms and limitation in this questionnaire applies." (Tr. 2695). On the other hand, he identifies both peripheral neuropathy and Plaintiff's morbid obesity as impairments that are expected to last at least twelve months on the date of his evaluation. (Tr. 2692). Given the ALJ's failure to discuss in greater detail

---

[8]Plaintiff argues that Dr. Dammel saw Plaintiff at a much greater frequency after her physical problems increased, with a total of 28 visits occurring from May 15, 2014 through November 20, 2015 (Doc. 7 at 7, citing Tr. 2330-2331). The ALJ's statement appears to be based upon Dr. Dammel's own statement on the RFC form that he had routinely seen Plaintiff 2-4 times per year since 2002.

the issues relating to Plaintiff's hip replacement, including but not limited to any exacerbation caused by Plaintiff's extreme obesity, the ALJ's analysis falls short of "good reasons."

In contrast to the discussion of the two treating physician opinions, the ALJ stated that she was giving "great weight" to the 2013 opinions of two state agency consultants who did not examine Plaintiff, and who did not have access to or review the most relevant evidence of Plaintiff's deteriorating physical condition, due to the dates of their opinions. The ALJ's analysis in this regard reflects additional reversible error. In *Blakley*, 581 F.3d at 409, the Sixth Circuit explained that when an ALJ credits the opinions of non-examining consultants who have failed to review a complete record over the opinions of a treating physician, the ALJ must articulate his reasons for doing so. The facts of *Blakley* required remand because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment…by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consultants opinions. *Id.* In this case, the ALJ similarly failed to acknowledge the glaring deficiencies of the very early consulting opinions by two physicians who rendered their opinions more than a year before Plaintiff's left hip condition began to significantly deteriorate, leading to her hip replacement. Although the ALJ limited Plaintiff to sedentary work despite the consultants' view that Plaintiff could perform light work, the ALJ did not sufficiently explain her reasoning for giving the consulting opinions "great weight." *See also Gayheart*, 710 F.3d at 379 (criticizing ALJ's failure to apply the same rigorous scrutiny to consulting opinions as he did to treating physician's opinions). Not only did the ALJ fail to acknowledge the fact that the consulting physicians lacked access to the most

critical orthopedic records and treating physician opinions, but the ALJ also failed to discuss the orthopedic records in any significant detail.

In light of the identified reversible errors under *Blakley* and *Gayheart*, and the ALJ's failure to sufficiently articulate "good reasons" for her rejection of the treating physicians' opinions, it is unnecessary to discuss Plaintiff's more specific argument that the ALJ erred by giving "little weight" to the opinions that Plaintiff would miss more than four days of work each month. (See 2328, 2695). On remand, the ALJ should reconsider the opinions of the treating physicians in their entirety, including but not limited to the opinions concerning Plaintiff's anticipated level of absenteeism.

### 4.  The Vocational Expert Testimony

Based in part upon the errors concerning the ALJ's evaluation of the opinion evidence, Plaintiff argues that the vocational expert was not provided an adequately formulated hypothetical question. Again, Plaintiff cites the opinions of her treating physicians concerning the number of days per month that she would be absent from work, supported in part by the frequency of her appointments in 2014 and 2015. Additionally, she argues that the ALJ failed to adequately consider that she cannot stand or walk for as much as two hours a day while holding a cane, and would be off-task for too great of a time period during the periods when she needed to stand (and therefore could not use both hands). The vocational expert provided somewhat equivocal testimony on this issue, (Tr. 138), which should be reconsidered on remand along with the impact, if any, caused by Plaintiff's obesity.

### 5. Sentence Six Remand

In her final claim, Plaintiff alternatively argues for remand under sentence six. She maintains that she submitted new and material evidence to the Appeals Council,

including evidence of a significant deterioration in her right hip, which resulted in a second hip replacement in 2016.

The law permits this Court to remand for only two reasons – either under sentence six, or under sentence four of 42 U.S.C. § 405(g).  The two types of remands are mutually exclusive.  Under sentence four, a court may enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *Walton v. Astrue*, 773 F. Supp. 2d 742, 746 (N.D. Ohio 2011)(internal citation omitted). Unlike a remand under sentence six, in a sentence four remand, this Court enters final judgment and does not retain jurisdiction.

At first blush, Plaintiff's sentence six argument appears to be relatively strong. However, in view of the Court's recommendation to remand this matter pursuant to sentence four of 42 U.S.C. § 405(g), there is no need to reach the alternative argument that Plaintiff is entitled to a remand based on the new evidence relating to her right hip. This Court cannot consider the referenced evidence under sentence four.  *See Cline v. Com'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (holding that when the Appeals Council considers new evidence but declines to review a claimant's application on the merits, the district court cannot consider that new evidence in deciding whether to uphold the ALJ's decision).  By contrast, the ALJ may properly consider the same evidence, as well as any other new evidence, on remand under sentence four.  See *Sullivan v. Finkelstein,* 496 U.S. 617, 625–26, 110 S.Ct. 2658, 2664 (1990) (sentence four provides appropriate relief when evidence on record is insufficient to support the Secretary's conclusions and further fact finding is necessary); *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173-175 (6th Cir. 1994).

### III. Conclusion and Recommendation

Under sentence four, a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added). This is not a case in which all factual issues have been resolved.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

NICOLE D. FARLOW,                                    Case No. 1:17-cv-27

        Plaintiff,                                    Barrett, J.
                                                     Bowman, M.J.

   v.


COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).